UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
iOPTIMIZE REALTY INC. f/k/a DYSAL, INC.,


                              Plaintiff,                          **MEMORANDUM & ORDER**

              -against-                                           21-cv-4179 (NRM) (ST)

COX ENTERPRISES, INC., COX
AUTOMOTIVE, INC., MANHEIM
INVESTMENTS, INC., and
DEALERTRACK INC.,


                              Defendants.
--------------------------------------------------------x
NINA R. MORRISON, United States District Judge:

     Plaintiff iOptimize Realty Inc. ("iOptimize") brings this action for breach of

contract and unjust enrichment against Cox Enterprises, Inc. ("CEI"), Cox

Automotive, Inc. ("CAI"), Manheim Investments, Inc. ("Manheim"), and Dealertrack

Inc. ("DT") arising from an exclusive brokerage agreement between Plaintiff and non-

party Dealertrack Technologies, Inc. ("DTI").   The Court has jurisdiction under 28

U.S.C. §§ 1332(a)(1) and (c).[1]

     Defendants have moved for summary judgment, asserting, *inter alia*, that the

resolution of an earlier litigation between Plaintiff and DTI bars Plaintiff's present

breach of contract claim under the doctrine of *res judicata* and that Plaintiff's unjust

---

[1] iOptimize is a citizen of New York for purposes of diversity jurisdiction.
ECF No. 89 (Sep. 10, 2025).   CEI, CAI, and DT are citizens of Delaware and Georgia;
Manheim is a citizen of Nevada and Georgia.   ECF No. 90 (Sep. 10, 2025).   Complete
diversity therefore exists between the adverse parties.   *See* 28 U.S.C. §§ 1332(a)(1)
and (c).

enrichment claim fails as a matter of law.    For the reasons stated below, the Court agrees.    Defendants' motion for summary judgment is granted.

## FACTUAL BACKGROUND

The following facts are not in dispute.    iOptimize is a licensed commercial real estate brokerage and consulting firm that works throughout the United States. Decl. of Donald Catalano dated Sep. 13, 2024 ¶2, ECF No. 82-2.    CEI is a privately owned holding company whose major operating subsidiaries include, among others, CAI.    Decl. of Deborah M. Lucy dated Oct. 13, 2023 ¶2, at 38, ECF No. 81-4.[2]    CAI, a wholly owned subsidiary of CEI, owns brands providing a variety of automotive services, including operations, inventory, marketing, and sales.    *Id.* ¶5, at 38.    In turn, Manheim is a wholly owned subsidiary of CAI and a holding company that owns assets related to vehicle auctions and remarketing.    *Id.* ¶7, at 39.

Non-party DTI was a firm focusing on web-based software solutions and services in the automative retail industry.    ECF No. 81-5 at 266–69.    In 2009, iOptimize and DTI (then known as Dealertrack Holdings, Inc.) entered into an exclusive brokerage agreement ("the 2009 Agreement").    ECF No. 82-5.    The 2009 Agreement was subsequently amended by the parties three times.    ECF No. 82-6; ECF No. 82-7; ECF No. 82-8.    The second amendment, executed on April 22, 2013, extended the 2009 Agreement three years through April 22, 2016.    ECF No. 82-7 at 3.    The 2009 Agreement also contained a "tail" provision that extended certain terms for 12 months after the expiration of the Agreement itself.    ECF 82-5 ¶8.

---

[2] Unless otherwise noted, all page references are to the ECF pagination.

In June 2015, CAI and DTI entered into a definitive merger agreement, with CAI agreeing to purchase all outstanding stock of DTI for $4 billion. ECF No. 81-5 at 174–264. CAI publicly announced this acquisition on June 15, 2015. ECF No. 81-5 at 266–69. This stock purchase was completed on October 1, 2015. ECF No. 81-5 at 271–73.[3]

Meanwhile, on August 25, 2015, iOptimize initiated litigation ("the 2015 Litigation") against DTI in New York Supreme Court, Suffolk County, Index No. 7646/15. ECF No. 82-16 at 6. While the 2015 Litigation was ongoing, DTI terminated the 2009 Agreement by letter dated March 9, 2016. ECF No. 81-5 at 87–88. By its own terms, the 2009 Agreement then expired on April 22, 2016. Following the expiration of the 2009 Agreement, on May 11, 2016, CAI initiated a second litigation ("the 2016 Litigation") against DTI in New York Supreme Court, Suffolk County, Index No. 607403/16. ECF No. 81-5 at 90–108 (2016 verified complaint); ECF No. 82-17 at 6.

On October 31, 2016, CAI merged DTI into Manheim and assigned to Manheim certain enumerated liabilities of DTI. ECF 81-5 at 289–91. DTI's remaining liabilities were assigned to DT. *Id.* By November 2016, DTI no longer existed.[4]

---

[3] The parties vigorously dispute the nature of CAI's acquisition of DTI. Plaintiff asserts that it was a merger between CAI and DTI. Pl. Mem. of Law in Opp'n to Mot. for Summ. J. ("Pl. Mem.") 13–14, ECF No. 83 (Oct. 15, 2024). Defendants assert that it was a stock purchase wherein CAI did not merge with DTI. Def. Mem. of Law in Supp. of Mot. for Summ. J. ("Def. Mem.") 25–26, ECF No. 81-1 (Oct. 15, 2024). The parties do not dispute, however, the fact that CAI acquired DTI's outstanding stock nor the dates on which it did so.

[4] Again, the parties dispute whether DTI ceased to exist on October 31, 2016,

*Id.* On April 22, 2017, the "tail" period of the 2009 Agreement between iOptimize and DTI ended, terminating the final terms of the contract between these two parties.

But while the 2009 Agreement had ended, iOptimize's litigation to recover commissions it claimed to have earned under the contract continued. On November 16, 2017, DTI made a N.Y. C.P.L.R. § 3219 tender of judgment to resolve the 2015 Litigation. ECF No. 82-16. This tender of judgment included payment, by a CAI corporate check, of $6.3 million to the Suffolk County Supreme Court. *Id.* at 9. iOptimize accepted this tender of judgment. Pl. Mem. at 14–15. Also on November 16, 2017, DTI made a N.Y. C.P.L.R. § 3219 tender of judgment to resolve the 2016 Litigation. ECF No. 82-17. This tender of judgment included payment, by a CAI corporate check, of $3.7 million to the Suffolk County Supreme Court. *Id.* at 12. iOptimize rejected this tender of judgment. Pl. Mem. at 15.

Following discovery and motion practice, on September 17, 2020, the Suffolk County Supreme Court granted DTI's motion for summary judgment, which sought "dismissal of [iOptimize's] claims for contractual and quasi-contractual relief regarding extension, modification or amendment of [the 2009 Agreement] to jurisdictions outside of and beyond New York." ECF No. 81-5 at 166. On February 5, 2021, however, the court granted iOptimize's motion for reargument, agreed with iOptimize that summary judgment had been entered prematurely, and permitted iOptimize to engage in further discovery. *Id.* at 165–168. The court reasoned:

---

following its merger with Manheim (as Defendants assert), or earlier, following its acquisition by CAI (as Plaintiff asserts). Both parties agree, however, that DTI no longer existed after October 31, 2016.

> Plaintiff is correct that a dispositive motion for summary judgment on all claims in this case was premature with discovery on the remaining balance of contractual and quasi-contractual claims for Cox entity properties outside of New York incomplete.    Plaintiff has persuasively made the case that it has [not] yet been able to depose representatives from Cox or its realtor CBRE and thus the Court ruled on an incomplete motion record. . . .     Since the Court agreed with this contention, [iOptimize's] motion for [reargument] is **granted**.

*Id.* at 168 (citation modified).

Following this decision, on March 24, 2021, DTI made a second N.Y. C.P.L.R. § 3219 tender of judgment to resolve the 2016 Litigation.    ECF No. 81-5 at 150–60. This tender of judgment included payment, by a cashier's check, of $5.5 million to the Suffolk County Supreme Court.    *Id.* at 155.    iOptimize accepted this tender of judgment on March 30, 2021.    *Id.* at 147–48.

Finally, on May 28, 2021, iOptimize and DTI executed a Stipulation of Discontinuance with Prejudice, resolving the 2016 Litigation.    *Id.* at 162–63.    The parties filed this Stipulation with the Suffolk County Supreme Court on June 2, 2021. *Id.*    The Stipulation specified that the March 2021 tender of judgment "resolve[d] and settle[d] [iOptimize's and DTI's] respective claims and counter claims."    *Id.* at 162.

## **PROCEDURAL BACKGROUND**

On July 16, 2021, less than two months after the parties executed their Stipulation of Discontinuance with Prejudice in the 2016 Litigation, Plaintiff initiated the instant lawsuit in the Suffolk County Supreme Court.    ECF No. 1-1 at 2.    Defendants removed to this District on July 26, 2021.    ECF No. 1.

On August 16, 2021, Defendants filed a letter requesting a pre-motion conference on their anticipated motion to dismiss. ECF No. 4. This letter argued that all claims raised by iOptimize were precluded under *res judicata* by reason of the 2016 Litigation. *Id.* at 2. Defendants attached Plaintiff's 2021 Statement for Withdrawal of Tender and the Stipulation of Discontinuance executed by Plaintiff and DTI. ECF No. 4-1 (Statement for Withdrawal of Tender); ECF No. 4-2 (Stipulation of Discontinuance).

The Hon. Kiyo S. Matsumoto, who was then presiding over this case, held a pre-motion conference. Judge Matsumoto advised the parties that, "as the pre-motion papers appear to rely on facts outside the pleadings which plaintiff asserts are in dispute, a 12(b)(6) motion [asserting *res judicata*] would be unlikely to succeed." Min. Entry dated Sep. 16, 2021. Judge Matsumoto also determined that "summary judgment would be premature at this stage" and referred the parties to the Hon. Magistrate Judge Steven L. Tiscione to begin discovery. *Id.* Defendants then filed their Answer on November 5, 2021. ECF No. 17. As their second affirmative defense, Defendants asserted that "Plaintiff's claims are barred, precluded, or limited, in whole or in part, by res judicata based on Plaintiff's discontinuance with prejudice of the 2016 lawsuit styled *iOptimize Realty, Inc. v. Dealertrack Technologies, Inc.*, Index No. 607403/2016." *Id.* at 15.

Following discovery, Defendants moved for summary judgment, *see* ECF No. 81, which was fully submitted on October 15, 2024. This motion thus provides

Defendants with their first opportunity to litigate their *res judicata* defense in this Court.   The Court heard oral argument on September 11, 2025.

## LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   "A material fact is one that might affect the outcome of a suit under governing law."   *Greco v. Local.com Corp.*, 806 F. Supp. 2d 653, 657 (S.D.N.Y. 2011) (LBS) (citing *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003)).   "A genuine issue exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.* (citation modified) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## DISCUSSION

### I.  Plaintiff's Breach of Contract Claim Is Barred by *Res Judicata*

"Under both New York law and federal law, the doctrine of *res judicata,* or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"   *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981)); *see also EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007).[5]   The

---

[5] Because the Court must consider the preclusive effect of a final judgment in a New York state court, the Court applies New York's law of *res judicata.   See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." (quoting

Second Circuit has explained that *res judicata* bars subsequent litigation "if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Thermal Surgical, LLC v. Brown*, No. 24-127, ---F.4th---, 2025 WL 2263862, at *4 (2d Cir. Aug. 8, 2025) (citation modified) (quoting *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012); *see also Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021). "[R]*es judicata* is an affirmative defense that should be raised in the defendant's answer . . . ." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).

Here, the undisputed facts establish that each of the four elements of *res judicata* is present. Defendants timely raised the defense, *res judicata* disposes of Plaintiff's breach of contract claim, and there are no genuine issues of fact which prevent the doctrine's application. Accordingly, Defendants are entitled to summary judgment on Plaintiff's first cause of action.

## A. The 2021 Stipulation of Discontinuance Is a Final Judgment on the Merits

First, the 2021 settlement between non-party DTI and Plaintiff operates as a final judgment on the merits. "A dismissal with prejudice constitutes a judgment on the merits just as fully and completely as if the order had been entered after trial [and] a decree of settlement will be given full res judicata effect in a subsequent suit between the parties and on all the claims comprised in the settlement." *Gianatasio*

---

*Allen v. McCurry* 449 U.S. 90, 96 (1980))).

*v. D'Agostino*, 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012) (RWS) (citation modified) (quoting *Modular Devices, Inc. v. Alcatel Alenia Space Espana, Space Systems/Loral, Inc.*, No. 08–CV–1441 (JS) (WDW), 2009 WL 749907, at *3 (E.D.N.Y. Mar. 16, 2009)); *see also United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 620 (S.D.N.Y. 2006) (DC) (collecting cases).

Here, Plaintiff accepted the $5.5 million tender of judgment "in full satisfaction of the claims asserted against [DTI] in the above-entitled action and only the above-entitled action," *see* ECF No. 81-5 at 147 (Statement for Withdrawal of Tender), and the parties to that suit entered a Stipulation of Discontinuance with Prejudice that "resolve[d] and settle[d] their respective claims and counter claims" and "discontinue[d] all claims . . . with prejudice." *Id.* at 162. By this settlement, the parties conclusively disposed of the 2016 Litigation. By withdrawing DTI's tender, Plaintiff ended the suit, since a withdrawal of tender is self-executing. *See* N.Y. C.P.L.R. § 3219 ("[T]he claimant may withdraw the amount deposited upon filing a duly acknowledged statement that the withdrawal is in satisfaction of the claim. The clerk shall thereupon enter judgment dismissing the pleading setting forth the claim, without costs.").

The N.Y. C.P.L.R. does not specify that a dismissal pursuant to Section 3219 is with prejudice, as required for a judgment to be final for *res judicata* purposes. *See id.* Here, however, the parties went further by affirmatively executing a Stipulation of Discontinuance with Prejudice. The "in the above-entitled action and only the above-entitled action" language Plaintiff used in the Statement for

Withdrawal of Tender — potentially an attempt to circumscribe the preclusive effect of the Section 3219 tender — is absent from the Stipulation of Discontinuance. ECF No. 81-5 at 162. By their tender and subsequent stipulation, the parties made (doubly) clear their intent to conclusively and with prejudice terminate all claims at issue in the 2016 Litigation. This state court resolution is a final judgment for purposes of *res judicata* in federal court. *See Ninety-Five Madison Co., L.P. v. Vitra Int'l AG*, 837 F. App'x 823, 825 (2d Cir. 2020) (holding that a plaintiff "cannot relitigate in federal court the substance of its binding state-court resolution").

## B. The Suffolk County Supreme Court Was a Court of Competent Jurisdiction

Second, there is no question that the Suffolk County Supreme Court was a court of competent jurisdiction to hear the controversy between Plaintiff and DTI. New York's Supreme Court is a court of "general original jurisdiction in law and equity." N.Y. Const. art. VI, § 7(a). Moreover, by the terms of the 2009 Agreement, Plaintiff and DTI consented to "jurisdiction in the State of New York and venue in Suffolk County" to resolve controversies between them. ECF No. 82-5 at 5. Accordingly, the Suffolk County Supreme Court had both subject matter jurisdiction over the controversy and personal jurisdiction over the parties.

## C. This Case Involves the Privies of the Defendant in the 2016 Litigation

Third, Defendants in the instant action are privies of DTI. "The doctrine of privity is a 'functional inquiry,' not a 'formalistic one,' and it must be applied 'with flexibility.'" *Cho*, 991 F.3d at 169 (first quoting *Chase Manhattan Bank, N.A. v.*

*Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995); then quoting *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)).    "Parties encompassed by privity include . . . those whose interests are represented by a party to the action."    *Leon v. Shmukler*, 992 F. Supp. 2d 179, 189 (E.D.N.Y. 2014) (JFB) (citation modified) (quoting *Chase Manhattan Bank, N.A.*, 56 F.3d at 346); *see also Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970) (discussing privity under New York law for purposes of *res judicata*); *Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108 (N.Y. 1987) ("Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding."). Especially significant to the instant case, "[p]rivity 'bars relitigation of the same cause of action against a new defendant *known by a plaintiff* at the time of the first suit where the new defendant *has a sufficiently close relationship to the original defendant* to justify preclusion.'"    *Cho*, 991 F.3d at 169 (emphasis added) (quoting *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995)).

The Court has no trouble finding privity between state-court defendant DTI and Defendants in the instant case.   The record indicates that DTI was acquired by CAI in 2015 and merged into Manheim in October 2016, with certain specific assets and liabilities explicitly assumed by Manheim and all other assets and liabilities contributed to DT.   ECF 81-5 at 289–91 (October 2016 merger document).   CAI is the direct parent corporation of Manheim and DT, and CEI is the ultimate parent corporation of CAI.   Defendants are all either direct or indirect holders of DTI's

former liabilities, including potential exposure as DTI's putative successors and/or affiliates under the 2009 Agreement (as extended through April 22, 2016) with Plaintiff, and all claims Plaintiff brings in this lawsuit arise out of that contract. Accordingly, Defendants all shared a common interest in the precise question at issue in the earlier litigation — that is, the extent of any alleged post-acquisition liability under the 2009 Agreement. *See Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 329 (S.D.N.Y. 2008) (RJH) ("[E]ach [defendant] shares a common interest in the issue that is dispositive as to the liability of *all* defendants—whether [p]laintiff has any rights to the [trademark] (and therefore, whether [p]laintiff could have suffered any injury from the defendants' actions).").[6]

Additionally, there is continuity of representation between DTI in the 2016 Litigation and Defendants in the instant action. Attorneys Frederick Whitmer and

_____

[6] Privity also extends to parties "who control an action although not formal parties to it." *Leon*, 992 F. Supp. 2d at 189. The record before the Court does not conclusively establish that Defendants in this action directly controlled DTI's litigation decisions in the 2016 Litigation, but the evidence strongly suggests this was the case. CAI tendered two checks in November 2017 to resolve the 2015 and 2016 Litigations against DTI, demonstrating CAI's direct involvement concerning DTI's liabilities to Plaintiff. *See* ECF No. 82-16 at 9 (CAI's tender in 2015 Litigation); ECF No. 82-17 at 12 (CAI's tender in 2016 Litigation). The record also establishes that CAI merged DTI into Manheim and allocated its assets and liabilities between Manheim and DT prior to the 2021 resolution of the 2016 litigation. *See* ECF 81-5 at 289–91. Given that the parties agree DTI ceased to exist, at the latest, after October 2016, it is not clear who else besides Defendants could have directed DTI's litigation decisions in the 2016 Litigation. But whether Defendants in fact exercised "control" over the 2016 Litigation is not necessary to, nor dispositive of, the issue before this Court. Instead, the Court considers this evidence as but one part of its "functional" *res judicata* inquiry into whether DTI and Defendants possessed a "sufficiently close relationship" such that Defendants' interests were represented in the prior litigation to which they were not parties. *See Cho*, 991 F.3d at 169; *Leon*, 992 F. Supp. 2d at 189.

Burleigh Singleton of Kilpatrick Townsend & Stockton LLP represented DTI in the 2016 Litigation, *see* ECF No. 81-5 at 151, and are both listed as attorneys of record for Defendants before this Court.    Attorney Whitmer submitted the 2021 pre-motion conference letter that initially raised *res judicata* as a defense.    ECF No. 4 at 3. Such "common representation" is an indication that Defendants' interests were "adequately represented" in the 2016 Litigation.    *Akhenaten*, 544 F. Supp. 2d at 329; *see also Ruiz v. Comm'r of Dept. of Transp. of City of New York*, 858 F.2d 898, 903 (2d Cir. 1988) (noting that, while common representation is "not conclusive on the issue of privity, [it is a consideration of] 'singular significance'" (citing *Watts*, 265 N.E.2d at 744)).

Finally, the record demonstrates that Plaintiff was fully aware of the relationship between DTI and Defendants CEI and CAI during its litigation in state court.    As Defendants point out, Plaintiff, in response to an interrogatory served in the Suffolk County Supreme Court proceedings, identified dozens of DTI locations at issue in that litigation and specifically "reserve[d] the right to amend and/or supplement [its] response with additional locations and amounts, inclusive of the locations of . . . Dealertrack/Cox Enterprises."    ECF No. 81-5 at 112 (September 15, 2016 interrogatory); *see also* Def. Mem. at 15–16.    Plaintiff also was aware of the two CAI corporate checks deposited with Suffolk Supreme Court as part of DTI's November 2017 tenders of judgment, further alerting Plaintiff to the close relationship between DTI and CAI.    This evidence demonstrates that Defendants — or, at a minimum, the parent organizations CEI and CAI — were "known by

13

[Plaintiff] at the time of the first suit," *see Cho*, 991 F.3d at 169, and that Plaintiff was aware of the close corporate relationship between DTI and Defendants.

Moreover, and importantly, Plaintiff's claims in the 2016 Litigation survived summary judgment at least in part because of its representations to the state court about its plans to depose CEI and/or CAI in relation to its claims arising from the 2009 Agreement.   In denying summary judgment on reargument, the court specifically noted that "discovery on the remaining balance of [Plaintiff's] contractual and quasi-contractual claims *for Cox entity properties* outside of New York [is] incomplete" and concluded that "Plaintiff has persuasively made the case that it has [not] yet been able to depose *representatives from Cox or its realtor CBRE* and thus the Court rules on an incomplete motion record."   ECF No. 81-5 at 168 (emphasis added) (citation modified).   This underscores Plaintiff's awareness of Defendants' connection to DTI; indeed, Plaintiff itself raised this issue in order to survive summary judgment and to fully litigate its claims given what it already knew about the relationship between these entities.

Plaintiff observes that it did not amend its complaint in the 2016 Litigation to add the present Defendants to that lawsuit.   Pl. Mem. at 36.   While Plaintiff conceded at oral argument that failure to do so does not necessarily preclude *res judicata* (and with good reason, since the law is clear that the doctrine may apply to parties who participated in the earlier litigation *or* their privities[7]), it places great

---

[7] The Second Circuit has noted that a plaintiff's choice not to amend a complaint to include actionable conduct by a defendant that takes place after a lawsuit is filed will not bar a subsequent lawsuit on the post-filing conduct.   *See*

weight on the fact that it did not do so.   The Court is unpersuaded.   Instead, Plaintiff's conduct in the 2016 Litigation shows (1) that such an amendment was within its contemplation and (2) that it was, prior to the decision to settle and discontinue the 2016 litigation, aware of the close relationship between DTI and the instant Defendants.   These facts, along with the history detailed *supra*, are sufficient to find that Defendants' interests were adequately represented in the 2016 Litigation and, accordingly, that Defendants were privies of DTI for purposes of *res judicata*.

### D. This Case Arises from the Same Cause of Action as the 2016 Litigation, and Plaintiff Could Have Raised the Instant Claims in That Litigation

Fourth, Plaintiff's instant claims arise from the same cause of action as its claims in the 2016 Litigation.   "[R]es judicata applies to issues that were not raised in the prior action, if they 'could have been raised in that action,' and 'applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due

---

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493 (2d Cir. 2014) ("If a defendant engages in actionable conduct after a lawsuit is commenced, the plaintiff may seek leave to file a supplemental pleading . . . to assert a claim based on the subsequent conduct.   But the plaintiff is not required to do so, and his election not to do so is not penalized by application of res judicata to bar a later suit on that subsequent conduct." (citation modified) (citations omitted) (quoting *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996))).   But this does not mean a plaintiff can avoid the application of *res judicata* whenever it could have amended its complaint but chose not to do so.   To so hold would vitiate the applicability of *res judicata* (1) to privies of earlier parties and (2) to claims that could have been raised in the earlier proceeding.   Moreover, as discussed in Section I.D *infra*, this case does not present circumstances like those contemplated by the *TechnoMarine* Court, because all the allegedly actionable conduct at issue in this suit occurred before Plaintiff filed the 2016 Litigation.

diligence.'" *Cho*, 991 F.3d at 168 (citation omitted) (first quoting *EDP Med. Computer Sys.*, 480 F.3d at 624; then quoting *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999)). "[A] claim 'could have been raised' in an earlier action for *res judicata* purposes if the two actions involve the same 'nucleus of operative fact.'" *Akhenaten* 544 F. Supp. 2d at 330 (citing *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)); *see also Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991) ("[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action." (citation modified) (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977), *cert. denied*, 434 U.S. 903 (1977))).

In both the 2016 Litigation and the instant proceeding, Plaintiff asserts breach of contract claims arising from DTI's and Defendants' alleged violations of the 2009 Agreement and has sought allegedly owed but unpaid brokerage fees under this Agreement as damages. ECF No. 81-5 at 102–03 (2016 complaint); ECF No. 1-1 (instant Complaint). Plaintiff has asserted virtually identical theories of liability rooted in a single alleged source of obligation (*i.e.*, the 2009 Agreement and its continuing effect after the 2015–16 acquisition and merger of DTI by CAI and its subsidiaries) in both cases; the only difference is which parties are named as Defendants and the number of transactions for which Plaintiff seeks a broker fee. This overlap in theories of recovery between the two litigations makes this an easier case than others in which courts have found *res judicata* applied to bar plaintiffs' claims. *See, e.g., L-Tec Elecs. Corp.*, 198 F.3d at 88 ("Even claims based upon

different legal theories are barred provided they arise from the same transaction or occurrence." (citation omitted)).

While Plaintiff asserted at oral argument that DTI "frustrated" Plaintiff's attempts at discovery in the 2016 Litigation that would have allegedly revealed the transactions that are the subject of this suit, even in the light most favorable to Plaintiff, the record contains no evidence of DTI's fraudulent concealment of evidence. Nor does the record demonstrate that Plaintiff moved to compel discovery it claims DTI should have but did not provide to it during the 2016 Litigation, or that DTI defied or otherwise ignored a court order to disclose. *See* N.Y. C.P.L.R. § 3124 (providing for motions to compel disclosure). That the Suffolk County Supreme Court specifically denied summary judgment as premature on reargument — citing Plaintiff's need for discovery on "Cox entity properties outside of New York," *see* ECF No. 81-5 at 168 — suggests that the court expected DTI to produce precisely the information that Plaintiff claims it was denied. But rather than continue with discovery in the 2016 Litigation after the court's February 5, 2021 summary judgment decision, Plaintiff almost immediately chose to accept DTI's tender of judgment on March 30, 2021 and terminate the case. Plaintiff certainly had a right to forgo such discovery and accept a suitable offer of settlement — but it cannot now complain that it had no meaningful opportunity to pursue the instant claims when it made that choice. Moreover, that Plaintiff filed the instant suit on July 16, 2021 — less than four months after accepting the tender of judgment, and weeks after executing a Stipulation of Discontinuance with DTI — strongly suggests that either

17

(1) continued due diligence in the 2016 Litigation would have revealed the information Plaintiff claims it newly relies on here or (2) that Plaintiff already possessed the evidence it needed to assert the claims it raises in this case. There is simply no evidence before this Court, much less compelling evidence, that the instant suit is based on newly discovered evidence sufficient to defeat a claim of *res judicata*.

Ultimately, the "nucleus of operative fact," *see Akhenaten* 544 F. Supp. 2d at 330, at issue in both the 2016 Litigation and this case includes (1) the terms of the 2009 Agreement, which, as extended, terminated on April 22, 2016; and (2) the 2015 acquisition of DTI by CAI, which Plaintiff argues extended the exclusivity terms of the 2009 Agreement to Defendants. All the operative facts occurred before Plaintiff initiated the 2016 Litigation on May 11, 2016 and were accordingly part of that litigation.

Plaintiff argues "many of the real estate transactions sought to be recovered in this action accrued subsequent to commencement of the 2016 Litigation, and therefore cannot be barred by res judicata." Pl. Mem. at 36. This is unpersuasive. In so arguing, Plaintiff relies upon the "tail" provision of the 2009 Agreement. Pl. Mem. at 29 (arguing Defendants "delay[ed] certain leasing transactions to avoid the 'tail period' and payment of additional commissions"). This "tail" provision entitled Plaintiff to compensation if DTI "lease[d] or purchase[d] any of the SITES [offered by Plaintiff] within twelve (12) months following the expiration of this Agreement." ECF No. 82-5 at 4. Compensation under the "tail" provision, however, was contingent upon performance of certain acts during the term of the 2009 Agreement.

Under the 2009 Agreement, DTI "agree[d] not to employ any other broker during the term of this agreement for this assignment" and promised "that any and all inquiries and offers regarding SITES which [DTI] may consider leasing during the Term shall be referred to [Plaintiff] so that [Plaintiff] may objectively evaluate all such inquiries and offers to determine whether same meet [DTI's] stated objectives." *Id.* In exchange for this exclusive brokerage agreement, Plaintiff committed to "offer[ing] [DTI] SITES" that it might consider for lease or purchase. *Id.* The "tail" provision was a mechanism by which Plaintiff could protect its interests as a broker under the contract; without the "tail" provision, DTI could avail itself of Plaintiff's services in procuring real estate locations for potential lease or sale and then simply wait until the day after the 2009 Agreement expired to execute the lease or sale, thereby avoiding paying a commission on the property that Plaintiff had identified.

But the "tail" provision created no obligations independent of the exclusive brokerage obligations existing elsewhere in the contract. Plaintiff concedes this point. Pl. Mem. at 32–33 ("Defendants also argue Plaintiff cannot recover commissions for real estate transactions entered into by Defendants during the 12-month 'tail period' . . . because Plaintiff never provided services to Defendants. Defendants disregard a critical pre-condition of the exclusive [2009] Agreement: *they were required to refer all inquiries and offers for any locations they considered leasing to iOptimize*."). In other words, DTI's relevant alleged breach of the contract (*i.e.*, employing another broker or failing to refer offers and inquiries), by Plaintiff's own account, occurred during the term of the contract, thereafter depriving Plaintiff the

19

opportunity for compensation during the 12-month "tail" period.  *See* Pl. Mem. at 8 ("[Defendants] *delayed* leasing transactions to forestall their contractual obligations." (emphasis added)).   Because the conduct about which Plaintiff complains in this suit occurred prior to the May 11, 2016 commencement of the 2016 Litigation, it arises from the same breach of contract cause of action at issue in the 2016 Litigation.[8]

The 2009 Agreement, as extended, terminated in April 2016.   The 2016 Litigation commenced on May 11, 2016 and continued until March 2021, five years after the expiration of the contractual terms under which Plaintiff seeks recovery. Contrary to Plaintiff's assertion, this is not a case where a new factual predicate arose after the commencement of the 2016 Litigation that would have created a new cause of action that is not precluded by *res judicata*.  *See, e.g.*, *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 385 (2d Cir. 2003) (reversing the district court's application of *res judicata* where plaintiff alleged a cause of action related to a "letter [that] was sent after final judgment in the First Action"); *TechnoMarine SA*, 758 F.3d at 501 ("Thus, if a party sues for a breach of contract, *res judicata* will preclude the party's subsequent suit for any claim of breach that had occurred *prior* to the first suit.  *Res*

---

[8]   As discussed in Section I.C *supra*, Plaintiff conceived of its claims in the 2016 Litigation as encompassing transactions by Defendants, as evinced by its "reserve[ing] the right to amend and/or supplement [its] response with additional locations and amounts, inclusive of the locations of . . . Dealertrack/Cox Enterprises," *see* ECF No. 81-5 at 112, and its representations to the Suffolk County Supreme Court that it required discovery on the "balance of [Plaintiff's] contractual and quasi-contractual claims for Cox entity properties outside of New York."   ECF No. 81-5 at 168.   This shows that the claims in the 2016 Litigation and the instant suit share a "nucleus of operative fact," as well as showing that Plaintiff was aware of Defendants' relationship to DTI during the earlier state court action.

*judica*ta will not, however, bar a subsequent suit for any breach that had not occurred when the first suit was brought." (citation modified) (citation omitted)); *Leon,* 992 F. Supp. 2d at 189 (finding *res judicata* did not apply because "plaintiffs . . . seek damages from the [defendants] based on [the defendants'] misconduct *after* the [earlier] arbitration and *unrelated* to the transaction that formed the basis for the arbitration").

Instead, Plaintiff's instant breach of contract cause of action relies entirely upon events that it alleges occurred before the 2016 Litigation.  *See Waldman*, 207 F.3d at 112–14 (finding that, while "legally significant acts occurring *after* the filing of a prior suit" may preclude *res judicata*, the case was barred because "it is simply not plausible to characterize [plaintiff's] claim as one based in any significant way upon the post-[first-litigation] facts").  Plaintiff could have raised the issues and transactions it asserts here in the 2016 Litigation, and its conduct and representations to the state court during that litigation demonstrate that it contemplated doing so.  Plaintiff chose not to assert these claims and instead settled the entirety of its dispute before completing discovery.  *Res judicata* bars Plaintiff from now relitigating those breach of contract claims it released through its 2021 settlement-with-prejudice of the 2016 Litigation.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's breach of contract cause of action is GRANTED.

## II. Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law

Plaintiff has pressed unjust enrichment claims in both the 2016 Litigation and the instant suit.   ECF 81-5 at 104 (2016 verified complaint); ECF 1-1 (instant Complaint).   As noted above, Plaintiff argues that, because "many of the real estate transactions sought to be recovered in this action accrued subsequent to commencement of the 2016 Litigation, [they] therefore cannot be barred by res judicata as a matter of law."   Pl. Mem. at 36.   Plaintiffs point to "approximately 250 real estate transactions that were executed during the relevant period."   *Id.* at 32; *see also* ECF No. 86-15 (list of transactions filed under seal); ECF No. 86-16 (supplemental list of transactions filed under seal).   As discussed in Section I.D *supra*, a cause of action to recover for these transactions based on a breach of contract theory is barred by *res judicata*, because the contractual breaches that would otherwise have triggered compensation for Plaintiff between April 2016 (when the 2009 Agreement terminated) and April 2017 (when the "tail" period ended) occurred prior to the May 11, 2016 commencement of the 2016 Litigation.   To the extent Plaintiff's attempt to recover for these transactions under an unjust enrichment theory survives the procedural bar of *res judicata*, the Court finds that this cause of action also fails as a matter of law.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."   *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp.*, Inc., 749 F. Supp. 3d 456, 472 (S.D.N.Y. 2024) (JGK) (quoting

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).  "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Id.* (quoting *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005)).  "To support an unjust enrichment claim a plaintiff must 'establish a specific and direct benefit' moving from the plaintiff to the defendant." *Brenner v. Brenner*, 821 F. Supp. 2d 533, 540–41 (E.D.N.Y. 2011) (DRH) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)); *see also M+J Savitt, Inc. v. Savitt*, No. 08-CV-8535 (DLC), 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) ("It is not sufficient for defendant to receive some indirect benefit—the benefit received must be 'specific and direct' to support an unjust enrichment claim." (quoting *Kaye*, 202 F.3d at 616)).

Plaintiff asserts that it "is permitted to plead an unjust enrichment claim in the alternative because Defendants dispute the enforceability of the [2009] Agreement or the application of the [2009] Agreement to the leasing transactions." Pl. Mem. at 34.  Plaintiff argues in essence that the dispute over the existence of a contract between it and Defendants is a genuine dispute of fact that precludes summary judgment.  The issue for Plaintiff is that the existence of a contract between that parties is not a material fact, in that its existence or applicability would not "affect the outcome of [this] suit under governing law." *Greco*, 806 F. Supp. 2d at 657.  If the contract exists, Plaintiff's unjust enrichment claim fails; if the contract does not exist, the claim also fails.

First, Plaintiff's primary argument seems to be that its entitlement to compensation for these transactions is rooted in the 2009 Agreement. *See* Pl. Mem. at 10 ("In total, Defendants completed at least 250 leasing transactions during the relevant period for which iOptimize would be entitled to a commission under the terms of the [2009] Agreement."). However, if Plaintiff relies on the 2009 Agreement to claim compensation for these transactions, the unjust enrichment cause of action is merely duplicative of its breach of contract claims and thus fails as a matter of law. *See Beth Isr.*, 448 F.3d at 587 ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 516 N.E.2d 190, 193 (N.Y 1987))). "If at summary judgment the court concludes that the contract at issue is valid and enforceable, then defendants are entitled to summary judgment on the unjust enrichment claim." *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 120 (S.D.N.Y. 2020) (PAE) (citation modified) (citations omitted). Of course, if Plaintiff must rely on the terms of the 2009 Agreement to claim compensation, it has another problem: these claims depend on conduct that occurred during the term of the 2009 Agreement (and thus prior to the 2016 Litigation) and are barred by *res judicata*.

Second, in the absence of a contract, Plaintiff has not raised a genuine, triable issue of fact as to first element of a claim for unjust enrichment. Defendants assert that "Plaintiff admitted that it has not conferred any benefits on Defendants whatsoever." Def. Mem. at 33. Plaintiff cites to no evidence in the record to rebut

24

this assertion.   Moreover, the Court's review of the record reveals no evidence of Plaintiff performing work on behalf of Defendants or otherwise conferring a benefit upon them.[9]   Because Plaintiff has not adduced evidence that it conferred a specific and direct benefit on Defendants, Plaintiff's unjust enrichment cause of action fails as a matter of law.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Accordingly, Defendants' motion for summary judgment as to Plaintiff's unjust enrichment cause of action is GRANTED.

/ / /

---

[9] The record in fact contains uncontradicted evidence that Plaintiff did not communicate with Defendants in relation to any of the transactions here at issue. *See* ECF No. 82-58 at 8:2–9:10 (deposition testimony of Plaintiff's President Catalano that he never communicated with Defendants about real estate transactions); *see also* Pl. Counter Statement of Material Facts ¶ 56, ECF No. 82-1 (Oct. 15, 2024) (admitting that "Plaintiff did not communicate with any of the Defendants about real estate transactions").   Given that Plaintiff's business is in real estate brokerage and consulting, it is not clear how Plaintiff could have performed work for or conferred a benefit upon Defendants without communicating with them in any way about these real estate transactions.   At most, President Catalano's deposition testimony indicates that Plaintiff did some work for *DTI* (but not these Defendants) while pressing the 2015 and 2016 Litigations, *see* ECF No. 82-58 at 8:2–9:10, but any potential claims arising from this work were expressly released when Plaintiff settled the 2016 Litigation with DTI.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in full.   This case is dismissed.   The Clerk of Court is respectfully directed to enter judgment and close the case.


SO ORDERED.


                                          _/s/ Nina R. Morrison_
                                         NINA R. MORRISON
                                         United States District Judge

Dated:       September 22, 2025
             Brooklyn, New York

26